IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JUST ENTERPRISES, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action |
| | ) | No. 06-5023-CV-S-JCE |
| (888) JUSTICE, INC., | ) | |

## ORDER

Plaintiff, a Missouri Corporation, has brought this action against defendant, a New York Corporation, under the Lanham Act, 15 U.S.C. § 1051 et seq., for service mark infringement and unfair competition. Subject matter jurisdiction is evoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). Plaintiff contends that the Court has personal jurisdiction over defendant because defendant maintains a web site at www.212justice.com that actively and continuously solicits commercial interaction with Missouri residents, and that actively displays, disseminates, and promotes the infringing (888) JUSTICE mark in Missouri; and that defendant maintains a website at www.888.justice.com that actively and continuously solicits commercial interaction with Missouri residents, that actively displays, disseminates and promotes the infringing (888) JUSTICE mark, and that includes a link for "Our National Program" that shows how residents of Missouri and other states may participate in the (888) JUSTICE program; and that defendant has actually made contracts and established a customer–licensee in Missouri. Plaintiff alleges that venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred, and continue to occur in the counties comprising the Western District

1

of Missouri; and that plaintiff's damages occurred and continue to occur in the Western District of Missouri.

Plaintiff asserts that it applied for federal registration of 1-800-JUSTICE on September 25, 1992, with the intent to use the mark for legal referral services, and it used the mark in commerce on or before March 17, 2003. As a result, United States Service Mark Registration No. 2,742,137 was issued on July 29, 2003. It asserts that because Registration No. 2,742,137 was based on intent to use the mark in commerce, the constructive date of first use of the 1-800-JUSTICE mark is September 25, 1992. Plaintiff states that the mark is used extensively in connection with its services in advertisements and other promotional material plaintiff distributes in print form, on television, the radio, and the Internet. Plaintiff contends that the mark has become well and favorably known in the Western District of Missouri, is uniquely associated with its legal referral services, is a valuable asset, and is a symbol of goodwill. It is asserted that on October 30, 2001, Jon L. Norinsberg, defendant's president, inquired about using the 1-800-JUSTICE number in New York. Negotiations ensued, but no agreement was reached. Plaintiff asserts that notwithstanding defendant's knowledge of its ownership of the mark, defendant has initially and continuously used the service marks (212) JUSTICE and (888) JUSTICE to promote defendant's identity and its services. As part of its promotional, marketing and sales effort, plaintiff asserts that defendant maintains interactive commercial websites at www.212justice.net and www.888justice.com. It is contended that throughout its websites, in both graphics and text, defendant repeatedly displays the (888) JUSTICE mark, and has repeatedly used these marks in press releases, advertisements, and other public statements. Plaintiff asserts that defendant's use of the marks (212) JUSTICE and (888) JUSTICE are likely to cause consumer confusion,

mistake and deception; that defendant has acted intentionally and willfully; and that use is likely to lessen the capacity of the 1-800-JUSTICE mark to identify and distinguish services it offers.

Pending before the Court is defendant's Motion to Dismiss, or in the alternative, Motion to Stay the proceedings in the above-styled case. Defendant contends that the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction; under Fed. R. Civ. P. 12 (b)(3) for improper venue; and under Fed. R. Civ. P. 12(b)(5) for insufficient service of process.[1] Alternatively, defendant contends that the case should be stayed pending a decision by the Trademark Trial and Appeal Board ["TTAB"].

Motion to Dismiss

In response to defendant's Motion to Dismiss, plaintiff contends that the Missouri long-arm statute applies because defendant has committed a tortious act within the state. Plaintiff asserts that due process would not be offended by the exercise of jurisdiction over defendant under Eighth Circuit law.

Plaintiff bears the burden of making a prima facie showing of personal jurisdiction. Harrison v. Union Pacific Railroad Co., 45 F. Supp. 680, 682 (E.D.Mo. 1999)(citations omitted). When the issue arises in the context of a motion to dismiss, the Court must view the evidence in the light most favorable to the plaintiff. Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd., 89 F.3d 519, 522 (8th Cir. 1986).

A prima facie showing of jurisdiction is made by showing: (1) that the action arose out of an activity covered by the long-arm statute, and (2) that defendant had sufficient minimum

---

[1] Plaintiff states, in its supplemental reply suggestions, that the issue of service of process is moot because defendant was served again on May 10, 2006, by serving the New York Secretary of State. Defendant has made no additional objections to service of process, and the Court concludes that this issue is moot and need not be further addressed.

contacts with the forum state to satisfy due process requirements in order to withstand a motion to dismiss. Conway v. Royalite Plastics, Ltd., 12 S.W.3d 314, 318 (Mo.banc 2000).

Under Missouri's long-arm statute, personal jurisdiction may be exercised by a Missouri court if the defendant has transacted any business within the state, made any contract within the state, or committed a tortious act within the state. The "transaction of any business" prong of the long arm statute has been construed very broadly by Missouri courts. "A corporation may be subject to long arm jurisdiction even though it would not be required to qualify to do business as a foreign corporation . . . . The business may consist of a single transaction, if that is the transaction sued upon." Mo. Rev. Stat. § 506.500.1; State ex rel. Metal Service Center of Georgia, Inc., v. Gaertner, 677 S.W.2d 325, 327 (Mo. banc 1984). Further, infringing upon a trademark is grounds for personal jurisdiction as the commission of a tortious act under the long-arm statute. Maritz v. Cybergold, Inc., 947 F. Supp. 1328, 1331 (E.D.Mo. 1996).

The law is well-established that Missouri's long-arm statute only confers jurisdiction to the extent allowed by the Due Process Clause. Id. at 1331. A forum state can maintain a suit against a non-resident defendant only when the defendant has had sufficient minimum contacts with the state such that the suit does not offend traditional notions of "fair play and substantial justice." Elaine K. v. Augusta Hotel Associates, 850 S.W.2d 376, 378 (Mo. App. 1993). "Random, fortuitous, or attenuated contacts with the forum state cannot create jurisdiction." Id., (quoting Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)). In evaluating minimum contacts, it is proper for a court to focus on the relationship among the defendant, the forum and the litigation. 850 S.W.2d at 378. Due process questions whether the defendant has "purposely availed" itself of the privilege of conducting activities within the forum state, such that the

4

defendant "should reasonably anticipate being haled into court there." Minuteman Press Intern., Inc. v. Hoffman, 826 S.W.2d 34, 36 (Mo. App. 1992) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  The exercise of personal jurisdiction violates the due process clause unless the actions of the "defendant himself . . . create a 'substantial connection' with the forum State." Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1389 (8th Cir.1991) (quoting Burger King, 471 U.S. at 475).

      The Eighth Circuit has set forth five factors to determine whether there are sufficient minimum contacts to confer jurisdiction.  To determine personal jurisdiction, the Court should consider the nature and quality of the contacts, the quantity of the contacts, the relationship of the cause of action to the contacts, the interest of Missouri in providing a forum for its residents, and the convenience or inconvenience to the parties.  E.g., Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996); In re Estate of Halverson, 840 S.W.2d 280, 283 (Mo. App. 1992).   Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1390 (8th Cir.1991). The first three factors are primary factors, and the remaining two are secondary factors.  Dakota Indus., 946 F.2d at 1390.  The Court looks to all of the contacts in the aggregate and examines the totality of the circumstances in making its determination. Northrup King. Co. v. Compania Productora Semillas Algodoneras, S.A., 51 F.3d 1383, 1388 (8th Cir.1995).  The third factor, the relation of the cause of action to the contacts, distinguishes whether the jurisdiction is specific or general. See Digi-Tel Holdings, Inc., 89 F.3d at 522 n. 4.  "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant regardless of where the cause of

5

action arose." Id.

     Plaintiff contends that there is personal jurisdiction in this case because defendant has a web site at www.212.justice.com that "actively and continuously solicits commercial interaction with Missouri residents, and that actively displays, disseminates, and promotes the infringing (888) JUSTICE mark in Missouri." [Complaint, at 1-2]. Regarding the nature and quality of the contacts, plaintiff maintains that defendant has actively engaged in marketing its services in Missouri, and therefore, that the nature and quality of contacts in Missouri weighs in favor of exercising jurisdiction. It is asserted that defendant has admitted that (888) JUSTICE posts information on internet web sites that are accessible to any internet user in the world, and that the services offered at www.888justice.com are available to consumers in any state. Plaintiff contends that the web site is targeted at attorneys in all states, and advertises the advantages of a viewer joining the web site to have access to defendant's referral program for advertising purposes and exclusive use of the (888) JUSTICE program within some defined area in the state. Therefore, plaintiff maintains that www.888.justice.com actively solicits customers within Missouri. Although defendant's president, Jon L. Norinsberg, has declared that (888) JUSTICE currently has no customers located in Missouri, it is plaintiff's contention that this alone does not allow defendant to escape this court's jurisdiction because the web site is interactive and allows a Missouri user to instantly access e-mail links and request information about the program. Plaintiff relies on Maritz for the proposition that the nature and quality of the contacts are sufficient for personal jurisdiction over a defendant where the defendant has a web site that consciously transmits advertising information for all internet users, aware that the information will be transmitted globally.

6

Further, in its Supplemental Reply Suggestions in Opposition to Defendant's Motion to Dismiss and Stay Proceedings, plaintiff contends that Jon Norinsberg transmitted an email to attorney Glenn Gulick in Joplin, Missouri, soliciting his association with defendant's (888) JUSTICE program. It is asserted that Mr. Norinsberg touted the "nationally advertised" telephone number (888) JUSTICE, and solicited attorney Gulick's association with defendant's (888) JUSTICE program, seeking to engage him to use and participate in the promotion of the mark in Missouri. Therefore, it is plaintiff's position that defendant's business efforts have reached Missouri's population, and that the requirements of Missouri's long-arm statute have been met. Because the internet web site is available to any user in the world, plaintiff asserts that Missouri attorneys can respond to and contact defendant, and additionally, that defendant is directly contacting Missouri attorneys such as Gulick.

Additionally, in the Suggestions in Support of Motion for Leave to File First Amended Complaint, plaintiff alleges that defendant has made contracts and established a customer-licensee in Missouri. Specifically, plaintiff contends that defendant has licensed (888) JUSTICE to Brown & Crouppen, Attorneys at Law, P.C., 720 Olive St., St. Louis, Missouri, and that the firm is using the mark for soliciting and obtaining business from people throughout Missouri.

Regarding the relationship of the cause of action to the contacts, plaintiff again relies on Maritz and asserts that this action results from injuries that, at least partially, arise out of or relate to (888) JUSTICE's web sites and the information posted at the web sites. Plaintiff contends that defendant's service and the promotional efforts that (888) JUSTICE employs by posting information on the web site infringe plaintiff's registered trademark, 1-800 JUSTICE, and that defendant has purposefully availed itself of the privilege of doing business in this forum.

7

Plaintiff asserts, additionally, that because there are minimum contacts, Missouri has an interest in providing a forum for its residents, which favors specific jurisdiction over defendant. It is also contended that plaintiff's choice of forum and the convenience it would be afforded favor exercise of jurisdiction here.

It is defendant's position that Missouri's long-arm statute does not apply. Defendant asserts in its Motion to Dismiss that plaintiff's complaint does not allege that (888) JUSTICE has transacted any business within Missouri or has made any contract in this state. It is contended that (888) JUSTICE's web sites do not "contain the level of interactivity that is required for their mere existence to qualify as a tortious act within the State of Missouri." [Defendant's Motion to Dismiss, p. 9]. Defendant also asserts that a single email would be insufficient to support personal jurisdiction. Regarding the email in question, defendant contends that the email is not a communication or solicitation for (888) JUSTICE, but rather, seeks an affiliation between Mr. Norinsberg's law firm and Mr. Gulick's law practice. "No affiliation of the Missouri recipient with (888) JUSTICE is even suggested, much less solicited." [Reply to Plaintiff's Addendum, p. 1]. Defendant contends that the email is a business proposal made solely on behalf of Mr. Norinsberg's law practice, rather than with defendant. It is asserted, moreover, that even if the email had been made on behalf of defendant, a single email contact, especially when it is unrelated to the cause of action, does not provide a basis for personal jurisdiction, as it would not satisfy the requirement that defendant have sufficient "minimum contacts" with the state and it would violate due process principles.

Regarding plaintiff's assertion that defendant has actually entered into a contract by licensing (888) JUSTICE to Brown & Crouppen, a law firm in St. Louis, Missouri, and that the

8

firm is using the mark for soliciting and obtaining business from people throughout Missouri, defendant has not addressed nor denied this allegation.

In Lakin v. Prudential Securities, Inc., 348 F.3d 704, 710 (8th Cir. 2003), the Court addressed whether defendant's web site should render it subject to general jurisdiction. It noted that neither Missouri courts nor the Eighth Circuit had addressed whether a web site may provide sufficient minium contacts to invoke personal jurisdiction. It also noted that a number of its sister circuits had addressed the issue in the context of whether a web site can provide sufficient contacts to invoke specific jurisdiction. The Eighth Circuit "agree[d] with [its] sister circuits that the Zippo model is an appropriate approach in cases of specific jurisdiction–i.e., ones in which we need only find 'minimum contacts.'" Id. at 710. In Zippo Mfg. co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D.Pa. 1997), the Court set forth a sliding scale to determine personal jurisdiction. At one end of the spectrum are situations where a defendant clearly does business over the Internet. At the other end are situations where a defendant has simply posted information on an Internet web site, which is accessible to users in foreign jurisdictions. In the middle are interactive Web sites where a user can exchange information and the exercise of jurisdiction is determined by the level of interactivity and the commercial nature of the exchange of information. Id. at 1124.

Having fully reviewed the positions of the parties, as well as relevant case law and statutory law, the Court finds that plaintiff has established that defendant had sufficient contacts with Missouri to make a prima facie showing of personal jurisdiction. In terms of the nature of the web sites under the Zippo guidelines, it appears that defendant's web sites, which are clearly commercially-based and which are interactive in that a user in Missouri can request information

9

about the program through email links, fall within the middle range. Additionally, defendant's president has made contact with a Joplin attorney, which could be construed to include using its web site for commercial purposes. Further, and perhaps most importantly, defendant does not dispute that it has entered into a contract with a St. Louis law firm to use its web site.

Based on a full review of the record, the Court finds that the nature of the web sites, the contract with the St. Louis law firm, as well as the contact with the Joplin attorney, have created a transaction of business within the state, and are sufficient to establish jurisdiction under Missouri's long-arm statute. The Court believes that plaintiff has met its burden of demonstrating that defendant has intentionally targeted its web sites to Missouri, and has knowingly conducted business with its residents, such that it can be determined that defendant has purposefully availed itself of doing business with the state. Because defendant's contacts within Missouri create a substantial connection with the state, the Court finds that defendant should expect to be haled into court here, and that the exercise of personal jurisdiction does not violate the Due Process Clause. After assessing the relevant factors to determine whether defendant has had sufficient minimum contacts with Missouri in order to be subject to personal jurisdiction, this Court finds that defendant's motion to dismiss for lack of personal jurisdiction must be denied.

Because the Court finds that personal jurisdiction exists, defendant's Motion to Dismiss pursuant to Fed. Rule Civ. Pro. 12(b)(2) for lack of personal jurisdiction should be denied.

Regarding defendant's Motion to Dismiss on the basis of improper venue pursuant to Rule 12(b)(3), defendant contends that venue is improper in this district because venue is only proper where defendant's alleged action occurred, and that defendant is not registered to do

business in Missouri nor does it own property here. Therefore, defendant contends that venue is not proper in this district.

Plaintiff asserts that venue is proper in this district because a substantial part of the events giving rise to the claim occurred and continue to occur in the counties comprising the Western District of Missouri, and the damage to plaintiff occurred and continue to occur in the Western District of Missouri. Plaintiff also states that if there is jurisdiction in this case, then venue is proper here.

The Court finds that because plaintiff is a Missouri corporation having its principal place of business in Joplin, Jasper County, Missouri, which is a county within the Western District of Missouri, because plaintiff contends that the actions giving rise to this lawsuit and the damages that flow from them, occurred in this district, and because the Court finds that it has personal jurisdiction over defendant, venue is proper in this district. Accordingly, defendant's Motion to Dismiss for improper venue should be denied.

Motion to Stay

Defendant has alternatively filed a Motion to Stay the proceedings in this case until the TTAB resolves whether or not the 800-JUSTICE trademark is entitled to registration on the principal register.

The record indicates that Mr. Norinsberg initiated a cancellation proceeding on June 17, 2005, with the TTAB, seeking to cancel plaintiff's registration for the 1-800-JUSTICE mark on the ground, among others, that the term was merely descriptive and had not acquired distinctiveness. On July 13, 2005, plaintiff filed a cancellation proceeding, seeking to cancel the (212) JUSTICE registration, in part, based on the allegation that it is confusingly similar to 1-

11

800-JUSTICE. On August 30, 2005, the TTAB consolidated the two cancellation proceedings into Cancellation Proceeding No. 92044641. Since the consolidation, the parties have entered into a protective order and exchanged discovery. On January 23, 2006, Norinsberg filed a Motion for Partial Summary Judgment, which is pending with the TTAB. In that motion, he asserts that 1-800-JUSTICE is merely descriptive and was devoid of acquired distinctiveness at the time of registration, and should not have been approved for registration.

Defendant contends that, in this case, the TTAB has specialized expertise in the area of trademark registration, which is the central issue it must decide, and that it is proper to defer to that expertise, even though the Court has it within its power to make trademark infringement determinations involving federal registrations. It is also asserted that a TTAB decision regarding whether the 800-JUSTICE trademark is entitled to registration on the principal register would be determinative of which party has priority in this action. According to defendant, if plaintiff's registration is cancelled, Jon Norinsberg's use in commerce of its (212) JUSTICE mark trumps plaintiff's recorded first use date, and this determination could both materially aid the Court in deciding the issues before it, and could be dispositive of plaintiff's infringement and unfair competition claims brought under 28 U.S.C. § 1125(a). Finally, it is argued that considerations of judicial economy suggest that a stay is appropriate because it would allow the TTAB to make its determination, which may resolve the pending dispute between the parties.

Plaintiff objects to a stay of these proceedings, asserting that neither the parties nor the issues are the same. Plaintiff states that the parties in the TTAB proceedings are Just Enterprises, Inc., and Jon L. Norinsberg, not (888) Justice, Inc. Plaintiff also asserts that the central issue is not only whether 1-800-JUSTICE is deserving of registration on the principal

register, but additionally, whether (212) JUSTICE is confusingly similar to 1-800-JUSTICE. It is also suggested that a ruling by the TTAB that defendant's (212) JUSTICE registration should be cancelled would be additional evidence of the infringement upon plaintiff's mark, supporting an award of damages to plaintiff, and would in no way moot the complaint. Plaintiff contends, additionally, that this proceeding should not be stayed pending the outcome of the cancellation proceeding because the TTAB cannot provide the relief requested in the complaint, including injunctive relief and damages. Further, it is asserted that the 1-800-JUSTICE mark is not a pending mark, but rather, a registered mark that enjoys the presumption of validity. To grant a stay because defendant hopes to have a valid mark cancelled, plaintiff contends, would further and unreasonably delay the relief sought in this action where defendant has engaged in a strategy to keep using the infringing marks as long as possible.

A district court has the discretion to stay an action pending the conclusion of an alternative proceeding, which bears upon the case. Kerotest Mfg. Co., v. C-O-Two-Fire Equip. Co., 342 U.S. 180 (1952). To resolve the issue, the Court must consider the doctrine of primary jurisdiction, which is "concerned with promoting the proper relationships between the courts and administrative agencies charged with particular regulatory duties." United States v. Western Pacific Railroad Co., 352 U.S. 59, 63 (1956). "Primary jurisdiction applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial proceeding is suspended pending referral of such issues to the administrative body for its views." Id. at 63-64. There is no fixed formula for applying the doctrine. Id. at 64. The question is "whether the

13

reasons and purposes it serves will be aided by its application in the particular litigation." Id. The rationale for the primary jurisdiction doctrine is two-fold: It ensures uniformity and consistency in the regulation of business entrusted to a particular agency; and it recognizes the expert and specialized knowledge of the agencies involved. See id.; Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 303-04 (1976); Goya Foods, Inc. v. Tropicana Prod., Inc., 846 F.2d 846, 851 (2d Cir. 1988).

Neither the Supreme Court nor the Eighth Circuit Court of Appeals has considered whether trial courts should stay judicial proceedings pending the outcome of TTAB proceedings. There is a split of authority on the issue of whether a district court should apply the doctrine of primary jurisdiction to stay trademark infringement litigation pending the outcome of TTAB registration proceedings. Some courts apply the doctrine and grant a stay. E.g., C-Cure Chemical Co., Inc. v. Secure Adhesives Corp., 571 F. Supp. 808 (W.D.N.Y. 1983); Driving Force, Inc. v. Manpower, Inc., 489 F. Supp. 21 (E.D.Pa. 1980).[2] Most courts, however, have held that the primary jurisdiction doctrine does not apply in such cases. E.g., PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75 (1st Cir. 1996); Cash v. Brooks, 906 F. Supp. 450 (E.D. Tenn. 1995); Krause Int'l, Inc. v. Reed Elsevier, Inc., 866 F. Supp. 585 (D.D.C. 1994). In Missouri, the Eastern District held that the primary jurisdiction doctrine did not apply in Maritz. The same decision was reached in Am. Bakeries Co. v. Pan-O Gold Baking Co., 650 F. Supp. 563 (D. Minn. 1986). The Court's reasoning in Maritz in denying a stay was premised on the fact that the action was brought under the Lanham Act for trademark infringement and unfair

---

[2] As noted by the court in Am. Bakeries Co., the stay in Driving Force ultimately did not avoid further trial court action. After a decision was rendered by the TTAB, defendant sought a stay pending an appeal to the Court of Customs and Patent Appeals, which was denied by the district court. Am. Bakeries Co., 650 F. Supp. at 567 n.4.

14

competition, the Patent and Trademark Office does not have exclusive jurisdiction over such claims, and a decision regarding whether to stay the action is discretionary. Maritz, 947 F. Supp. at 1337. It found that a decision by the Office regarding whether to issue a registered trademark to defendant would not be determinative of any issues before it, even though such a decision might aid the court and might be prima facie evidence of a right of priority to use. Even though the Office has specialized expertise and experience in the area of the registration of trademarks, the court held that the ultimate issue it had to decide was whether a trademark violation or unfair competition had occurred in violation of 15 U.S.C. § 1125(a), which are issues the Patent and Trademark Office could not resolve. The Court found, additionally, that judicial economy suggested that a stay was not appropriate, given that a stay could cause considerable delay in the proceedings, yet would not resolve the pending dispute between the parties.

In this case, plaintiff's complaint alleges in Count I that defendant's use of the (212) JUSTICE and (888) Justice marks to promote, market or sell services in direct competition with 1-800-JUSTICE constitutes service mark infringement pursuant to 15 U.S.C. § 1114; that the infringement is intentional and willful, and that it has caused damages to plaintiff, including irreparable harm for which there is no adequate remedy at law. In Count II, plaintiff alleges that the use of defendants' marks constitutes unfair competition pursuant to 15 U.S.C. § 1125(a), which unfair competition is intentional and willful; and which has caused harm, for which there is no adequate remedy at law. Plaintiff seeks a declaration that its 1-800-JUSTICE service mark is valid, enforceable and has been infringed by defendant, which constitutes unfair competition and that the infringement of plaintiff's rights was willful. Injunctive relief is also sought, as well as damages and attorney's fees and costs.

15

This Court has fully reviewed the arguments of the parties and applicable case law regarding whether to grant a stay in a Lanham Act case where there is a trademark cancellation proceeding pending before the TTAB. It is clear that most district courts to consider the issue have declined to grant a stay, and that two district courts within the Eighth Circuit, including the Eastern District of Missouri, have followed the majority position. After careful consideration, the Court finds the reasoning in the cases rejecting the application of the primary jurisdiction doctrine to be persuasive.

The reasons given for rejecting the application of the primary jurisdiction doctrine and denying a stay of the judicial proceedings in trademark infringement cases are typically as follows: First, the doctrine is generally invoked in cases where an administrative agency has a unique expertise in a particular area of unfamiliarity to the courts, while the area of trademark infringement and unfair competition are ones in which the courts have long-standing familiarity. Goya, 846 F.2d at 853; Am. Bakeries Co., 650 F. Supp. at 567. Second, Congress has expressly given the courts the authority to decide trademark issues. 15 U.S.C. § § 1114, 1120 & 1125; Goya, 846 F.2d at 852 (citing 15 U.S.C. § 1071(a) & (b)). Third, a district court's review of a TTAB's decision is essentially "an independent judicial proceeding." Goya, 846 F.2d at 852. "In any trademark case, the court must ultimately make its own determination concerning the validity of the mark." Am. Bakeries Co., 650 F. Supp. at 567 n.3. Although courts must defer to the TTAB's findings of fact, the parties may submit new evidence for the district court's consideration. CAE, Inc., 267 F.2d at 673-74. The district court's "review of the TTAB's decision is considered de novo when the parties present new evidence and assert additional claims." Id. at 674; Goya, 846 F.2d at 853. The outcome of a registration proceeding would not

affect the legal standard applied in the infringement claim or the scope of the required fact-finding because the district court would still independently have to determine the validity and priority of the marks and the likelihood of consumer confusion and unfair competition. Goya, 846 F.2d at 854. Therefore, the court's review of a TTAB registration proceeding is essentially a "new action." CAE, Inc., 267 F.3d at 673. Fourth, the courts examine whether the case is solely about trademark registration, which it rarely is. Rather, as in the instant case, where there are issues of trademark infringement and unfair competition, the courts have found that "the interest in prompt adjudication far outweighs the value of having the views of the [TTAB]." Goya, 846 F.2d at 853-54. The fact that there is a need for the litigant seeking relief to be able to conduct its business affairs, and that there is often urgency in infringement actions because ongoing business is involved and harm may be accruing, are found to weigh against a stay. It is generally noted that the issues of infringement and other claims will not be considered by the TTAB and the TTAB can therefore not award relief on these issues, which results in a stay unnecessarily delaying the parties' dispute. Am. Bakeries Co., 650 F. Supp. at 80. Therefore, the majority of the courts have concluded that it is not in the interests of judicial economy to stay a case, and decline to apply the doctrine of primary jurisdiction to grant a stay pending the TTAB's decision.

  Having fully reviewed the position of the parties and applicable case law, and based on the factors outlined herein, the Court finds that defendant's motion to stay will be denied. Notwithstanding defendant's assertions in support of a stay, it has failed to demonstrate to the Court that there is any reason in the instant case to decline to follow the decisions of most other courts to have addressed this issue, including other district courts within the Eighth Circuit. This Court must ultimately make its own determination concerning the validity of the mark, as well as

the issues of infringement and unfair competition. Additionally, the TTAB cannot provide the relief requested in the complaint, including injunctive relief and damages. Finally, to grant a stay would further delay the relief sought in this action. Accordingly, the Court finds that defendant's Motion to Stay will be denied.

For the foregoing reasons, it is therefore

ORDERED that defendant's Motion to Dismiss the instant case on the basis of lack of personal jurisdiction and venue be, and it is hereby, denied. It is further

ORDERED that defendant's Motion to Stay be, and it is hereby, denied.

/s/ James C. England
JAMES C. ENGLAND, CHIEF
United States Magistrate Judge

Date: 2/8/07