```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF MISSOURI
                      SOUTHERN DIVISION


   JUST ENTERPRISES, INC.,        )
                                  )
                     Plaintiff,   )
                                  )
                     vs.          )  No. 06-CV-05023-JCE
                                  )  June 15, 2009
   (888)JUSTICE, INC.,            )
   JON L. NORINSBERG,             )
                                  )
                     Defendants.  )  Springfield, Missouri



                 PLAINTIFF'S OPENING STATEMENT
           BEFORE MAGISTRATE JUDGE JAMES C. ENGLAND
                 UNITED STATES DISTRICT COURT

APPEARANCES:
FOR THE PLAINTIFF:            MR. JEFFREY H. KASS
                              GALLOP, JOHNSON & NEUMAN
                              101 S. Hanley, 15th Floor
                              St. Louis, MO  63105



FOR THE DEFENDANT:            MR. DOUGLAS M. WEEMS
                              SPENCER FANE BRITT & BROWNE
                              1000 Walnut St., Ste. 1400
                              Kansas City, MO  64106-2140


                              MR. JON L. NORINSBERG
                              ATTORNEY AT LAW
                              255 Broadway, Ste. 2700
                              New York, NY  10007



COURT REPORTER:               MS. JEANNINE RANKIN,CSR,CCR,RPR
                              U.S. COURT REPORTER
                              222 N. Hammons Parkway
                              Springfield, MO  65806

Proceedings reported by stenography; transcript produced by
computer.
```

1                MR. KASS:  We met briefly during questioning of the
2    jury pool and I just want to reintroduce myself.  My name's
3    Jeffrey Kass.  I'm an attorney in St. Louis, and I represent
4    the plaintiff in this case, Just Enterprises, Inc.  I'd also
5    like to introduce Ms. Tina Dobrauc.  She's the founder and one
6    of the owners of Just Enterprises, Inc.
7                I'm going to apologize in advance.  Sometimes I do
8    trip over my words and call Mrs. Mr. and all this kind of
9    stuff.  I can assure you I'm going to try my best to present
10   as clear as possible the evidence in this case, but excuse me
11   if I trip over my words from time to time.
12               I also briefly, before I tell you what I believe the
13   evidence will show in this case, I want to thank you for the
14   time that you are about to put into this case.  I know I've
15   got lots of friends in St. Louis and they get a notice in the
16   mail says you've got jury duty, the first person they call is,
17   "Jeffrey, can you get me out of this?"  I understand.  It's
18   not the thing that was on your Microsoft Outlook calendar to
19   come here today.  But the truth is, a lot of places in the
20   world when they have disputes, they resolve them in much
21   different ways than we do, sometimes with guns and battles.
22   We have a really nice system of justice in this country where
23   people can come here and resolve their differences civilly.
24   So the only way that happens is by the time that you put in.
25   Both Mr. Weems and I appreciate that.

1    The opening statement is time for me to basically
2    tell you what we believe the evidence in this case will show,
3    and that's what I'm going to try to do here.  This is a
4    trademark case.  You've heard service mark and trademark, and
5    one's for goods and one's for services.  I've been doing this
6    so long trademark is programmed in my brain.  Even though this
7    is a service mark case, I'm going to use the word trademark.
8    It's just a habit of mine.

9            My client, Just Enterprises, Mrs. Dobrauc here, they
10   filed this lawsuit against Mr. Norinsberg and his company
11   because of their use of the mark (888) JUSTICE.  They
12   believe -- Mrs. Dobrauc believes that (888) JUSTICE infringes
13   her trademark of 1-800-JUSTICE.  That's what this case is
14   about.

15           Now, the evidence is going to be that in 1992, Just
16   Enterprises filed -- I know you heard a lot of Chinese,
17   basically, today; you're listening to all these instructions
18   and it's, you know -- sometimes even I'm listening to it and
19   I'm like, gosh, somebody who's never studied trademark law,
20   this could be a problem.

21           In 1992, Just Enterprises filed what's called an
22   intent to use application with the United States Patent and
23   Trademark Office.  What that essentially does is it reserves
24   your place in line:  I thought of this, I have this name, I
25   have this trademark that I want to use in my business, I'm not

3

1 necessarily using it yet, I have an intent to use.  That's why
2 it's called an intent to use application.  I have an intent to
3 use this trademark.  And so long as somebody else wasn't using
4 before you, that's the line -- that's the place in line that
5 you have.  That's the date that it says.  And Just Enterprises
6 filed that application in 1992.

7       Now, around that same time Just Enterprises started
8 to use the trademark 1-800-JUSTICE.  Very, very, very sporadic
9 and very, very little, but they found a law firm in New York
10 and that law firm is essentially licensed, or got permission
11 from Just Enterprises to use that mark and ran some television
12 ads, you know, Call 1-800-JUSTICE, 1-800-JUSTICE, this is my
13 law firm, and started using that trademark.  There were a few
14 other instances back in that 1992-1993 time period where Just
15 Enterprises would send out -- they would -- somebody would
16 express an interest in the 1-800-JUSTICE trademark and the
17 phone number and so there would be an exchange of these faxes
18 that said, yes, I'm interested in the trademark 1-800-JUSTICE.
19 And so a little bit of that went on in 1992, 1993.

20       But then problems started.  And this has nothing to
21 do with Mr. Norinsberg.  But a company -- another company
22 called Patients Plus filed a trademark application around the
23 same time for 1-800-JUSTICE.  They didn't have the rights to
24 the phone number even, but they filed this application.  Then
25 they filed some proceedings with the FCC saying that Just

4

1  Enterprises didn't have the right to use -- had to do with
2  toll-free numbers, didn't have to do with trademarks.  But
3  these legal proceedings went on for -- all the way to around
4  2000.  For eight years my client was spending over a hundred
5  thousand dollars fighting this company Patients Plus.  At the
6  end of the day, the federal government, both in the patent and
7  trademark office and the FCC said, you know, Just Enterprises
8  is entitled to the phone number and they're entitled to this
9  trademark.  But that -- you can imagine their money, instead
10 of marketing 1-800-JUSTICE, their money was being spent
11 fighting Patients Plus.
12         So the intent to use application, going back to
13 that, that was kind of just suspended for awhile.  The patent
14 and trademark hadn't been rejected, they didn't accept it,
15 they basically said, "Let's wait and see what happens with all
16 these other proceedings and then we'll decide whether you're
17 entitled to this trademark."
18         And so finally in I think 2003, when all --
19 everything is way out of the woods, everything's clear, the
20 patent and trademark office issued a federal registration for
21 the trademark 1-800-JUSTICE.
22         And just briefly -- I don't want you to have to
23 stare and twist your necks the whole trial, but if you look
24 over here, I did a blow-up of it.  This is the federal
25 trademark registration for the trademark 1-800-JUSTICE issued

5

1 by the United States government.

2 Now, the way that process works at the patent and
3 trademark office, somebody files a trademark application and
4 lawyers at the patent and trademark office take a look at the
5 application and they determine whether they think that you
6 have a right to a registration of the trademark. That's the
7 process you go through. They don't always get it right.
8 There's processes in there for companies to fight each other
9 at the patent and trademark office and there's appeals and
10 there's all that sort. But the initial attorneys that look at
11 this look at it and tell you whether you're entitled to
12 registration. If nobody else comes in, then they issue the
13 registration. And I'll talk a little bit more about that
14 during the trial but that's essentially the process.

15 Now, the evidence will be around this same time
16 period that the federal registration has been issued, that's
17 when Just Enterprises really was able to gear up and start
18 using this mark around that same time period and they started
19 marketing the trademark 1-800-JUSTICE. They started
20 advertising in the 2002-2003 time period right here in the
21 Springfield phone book. Joplin's got a phone book. I
22 think -- I'm from St. Louis but I saw there's a phone book
23 that covers Oklahoma, and southern -- southwestern Missouri
24 and some other areas that was in that phone book. But they
25 also started licensing it to lawyers around the country.

6

1          Somebody in another state, a lawyer, say, in a
2 market could pay a certain amount of money and then they would
3 get the right to use 1-800-JUSTICE and then when phone calls
4 would come in to the ad, obviously the calls would go directly
5 to them.  That's how it works.  And you'll see 1-800-JUSTICE
6 set up a website, 800justice.com.  They hired a national
7 marketing company to try to take this thing national and
8 market this on a national basis.  It was full-fledged use
9 right before and at the time of this registration and it's
10 continued through to today.
11         And the evidence will be very clear that there was
12 always plans in place from the time that this company was
13 founded and the time 800-JUSTICE was acquired by Just
14 Enterprises, there were always plans, concrete plans to take
15 this on a national basis.  And it makes sense.  After these
16 parties have -- after fighting 1992 through now we're in 2009,
17 17 years, it makes sense that these plans in place to take
18 this national, it's a very valuable trademark that companies
19 could use and pay a fee to use this in their business.
20         Let me talk a little bit about Mr. Norinsberg.
21 Mr. Norinsberg is an attorney in New York City and he first
22 entered the scene, his testimony will be, in 1998, six years
23 after the intent to use application was filed by my client.
24 And he started using the mark (212) JUSTICE strictly in New
25 York City.  It wasn't a matter of licensing it to folks.  He

7

just used it in New York City to help direct business to his law firm. And I believe Mr. Norinsberg is in the business of people have a complaint that their police officer abused their power or a fire fighter or a doctor did something wrong in their practice that -- it was used to try to direct traffic to that business.

My client became aware of Mr. Norinsberg in 2001 when Mr. Norinsberg actually attempted to buy 1-800-JUSTICE, attempted to acquire -- or attempted to acquire some type of rights to use 1-800-JUSTICE. There were a few conversations. There was no agreement on this. My client did not want to give Mr. Norinsberg any rights to use 1-800-JUSTICE and that was the last of that conversation.

Now -- and (212) JUSTICE, frankly, wasn't even really on the radar screen of my client at that time. There's a significant difference -- there could be still problems, but there's a significant difference between toll-free numbers and numbers that have area codes in front of them. (888) JUSTICE and 800-JUSTICE, that's what my client has been focused on. The area codes and JUSTICE, while, again, could be a problem, was kind of a secondary concern over the years. So there was no -- any further back and forth at that time when Mr. Norinsberg and Just Enterprises were in touch with each other.

Then Mr. Norinsberg came on the scene again in 2004.

8

1    He acquired the phone number (888) JUSTICE and he began to use
2    this phone number to license lawyers around the country in the
3    same places that Just Enterprises wanted to license its
4    800-JUSTICE phone number.  And I think the evidence will be
5    obvious that these two trademarks are not just similar,
6    they're strikingly similar.  Two numbers.  I mean, they're
7    about as similar as you can get without being identical.  And
8    the evidence will be that that's a clear infringement of our
9    client's trademark for 1-800-JUSTICE.

10           But the evidence is not just going to be that even
11   though Mr. Norinsberg knew about 1-800-JUSTICE when he did
12   this, but he also began a full-scale assault on my client's
13   business.  He filed a cancellation proceeding at the patent
14   and trademark office against 1-800-JUSTICE.  By that time my
15   client had no choice; they filed one back, and the next thing
16   you know we've got litigation going on here in Springfield,
17   Missouri.  He also even filed lawsuits against some of Just
18   Enterprises' lawyers for trying to enforce the trademark
19   1-800-JUSTICE.  And you'll hear some evidence about that in
20   this case.

21           He's forced Just Enterprises to rack up over
22   $400,000 in legal fees since this began.  And you will hear
23   evidence from Mr. Norinsberg that, oh, my, Just Enterprises
24   abandoned its use of 1-800-JUSTICE.  But I think you'll see
25   the evidence is from about the time this registration forward

9

1  there's been nonstop use of this trademark.  There's been
2  signing up of licensees.  There's been signing up of marketing
3  companies.  There's been no abandonment whatsoever of this
4  trademark.
5      You will hear, "Oh, I thought I had permission to
6  use the trademark.  Because we didn't come to an arrangement
7  in 2001, when I acquired (888) JUSTICE in 2004, I just figured
8  I had your permission to use it."  You'll hear that evidence.
9  And I think you'll see very clearly after three years of
10 litigation that these parties engaged in, there's no
11 permission to use this trademark.  We wouldn't be here today.
12      And the crux of trademark law, as you just heard
13 from the instructions, is whether consumers could be confused
14 between these two trademarks.  And the evidence would be
15 that -- not that they could be confused, that consumers are
16 wildly confused between these two trademarks, and you will
17 hear of the thousands of calls that come into 1-800-JUSTICE
18 but they're calling from states in which Mr. Norinsberg
19 advertises (888) JUSTICE, where Just Enterprises doesn't even
20 have a licensee there.
21      You'll hear lots of evidence.  You'll hear
22 recordings of phone calls when people are asking for the names
23 of law firms and which are Mr. Norinsberg's licensees but
24 they're are calling 800-JUSTICE.  There's wild confusion, and
25 you can see why:  1-800-JUSTICE, (888) JUSTICE.

10

1          Unfortunately, if that was all this case was about,
2    it would be a very simple case.  But the main issue in this
3    case, unfortunately, is a little bit more complex.  And
4    because I don't think there's much debate about whether these
5    marks are confusingly similar, the debate, though, is whether
6    (888) JUSTICE is a valid trademark.  If it's a valid
7    trademark, it can be enforced.  If it's not a valid trademark,
8    it can't be enforced.  That's what most of your job is going
9    to be about.

10         There are two concepts in the law and I'm -- I don't
11   understand them completely so I don't expect anything I say to
12   you is going to make you understand them completely, but
13   that's how difficult this case is.  There are two types of
14   trademarks.  There's more than two types, but the two types of
15   trademarks at issue, one is called a descriptive trademark and
16   one is called a suggestive trademark.  A descriptive trademark
17   describes an essential part of the product.  One case once
18   held that 1-800-MATTRESS described mattresses.

19         A suggestive trademark requires the person to use a
20   little bit of imagination or thought to determine what that
21   trademark might mean.  And so Just Enterprises believes that
22   1-800-JUSTICE is a suggestive trademark; that some -- people
23   could think lots of things when they think of justice.  They
24   could think of law enforcement.  They could think of the
25   Justice Department.  They could think of environmental

11

justice.  They could think of children's welfare justice.
They could think of all kinds of things, and they can think of
lawyers, but it requires some type of imagination.  A
suggestive mark is a valid trademark.  A descriptive mark is
only valid under certain circumstances which aren't really
involved in this case.  So that's what this case really boils
down to.

The patent and trademark office, when these
applications go through, they obviously look at that
determination as well and if it's a descriptive trademark,
they go to the applicant and they say, "Listen, we believe
this is descriptive and we need you to prove a whole bunch of
stuff otherwise we can't give you a trademark.  We can't give
you a registration."

The patent office didn't do that in this case.  They
looked at the 1-800-JUSTICE trademark in connection with legal
referral services and they said, "We think you have a valid
trademark."  Never mentioned it being descriptive whatsoever.

Now, you're going to hear from some experts in this
case, two experts.  There'll be evidence of an expert
designated by the defendants named Mark McKenna who's a
professor -- he was a professor in St. Louis.  He's no longer
there.  And he says this case is a close call.  I think I just
told you this case was a close call.  But he says that justice
is very similar to mattress.  I think the evidence will be

12

it's just not the case. But even more important, Mr. McKenna never looked at all the evidence in this case. He never looked at all the documents in this case. He was involved for a very short period of time. But you won't hear evidence of that. You also will hear Mr. McKenna say, "When it's a close call, you might want to take a look at what the patent and trademark office experts had to say about this since they are tuned into this at the time that this was filed."

Now, you'll also hear evidence from an expert Mr. James Berger. Mr. Berger conducts surveys of consumers, and tries to determine what do people think. And I think even though Mr. Berger is going to get up here -- Mr. Berger, I think, was paid something like $25,000 to testify in this case. You're going to hear him say on behalf of the defendants, "The consumers believe this is descriptive." I want you to pay close attention because I think that evidence actually is going to show the opposite in this case, that this mark is suggestive. By anybody's count, one out of every two people did not think of legal services automatically when they heard 1-800-JUSTICE.

You also will hear evidence of lots of other marks that have gone through the patent and trademark office that were Justice-For-All, Justice This, Justice This. There's a whole bunch of Justices in relation to legal services. And the patent and trademark office didn't make them -- they

didn't tell them that those were descriptive either.  So it wasn't just a mistake in one application.  This is a pattern that the patent and trademark office does not believe that the trademark Justice is descriptive when it comes to legal services.

Even more telling, Mr. Norinsberg himself did not believe that Justice was descriptive.  He will tell you that in court.  But what he told the patent and trademark office when he filed for (212) JUSTICE was that, "I think I'm entitled to a trademark on (212) JUSTICE."  And the patent office didn't make him prove it was -- they didn't tell him that (212) JUSTICE was descriptive.  And he filed for 1-800-JUSTICE and he filed for (888) JUSTICE.  No time does the patent and trademark office talk about Justice in connection with those were descriptive.  And he signed those representations at the patent and trademark office under the penalty of perjury.

Certainly some people are going to hear 1-800-JUSTICE and think of legal.  I'm not here to debate that.  But I think you -- the evidence is going to be that it's all over the board.  Some people think it's lawyers, some people think it's something else, some people think it could be lawyers or it could be something else.  You'll see advertisements, and the reason why nobody just advertises 1-800-JUSTICE without any explanation what it would be -- what

14

you would be calling, they put on, this is a law firm. They describe in the advertisements exactly why people would be calling 1-800-JUSTICE. Oh, it's for a law firm. So you don't have to get into this situation. With 1-800-MATTRESS, I don't think anybody here could suggest that they're calling for legal services or they were calling for desks. They're calling for mattresses. It's obvious. This is not that kind of case.

After you hear all the evidence about the infringement that Just Enterprises believes Mr. Norinsberg and his companies have caused, we're also going to -- we believe that you're going to -- this is where I trip over my words. We also believe the evidence is going to show Mr. Norinsberg has engaged in a series of intentional acts to use this mark knowingly, using this mark as an infringing trademark over the years.

At the end of the evidence, we're going to present evidence of the damages that Just Enterprises has suffered, and those come in multiple forms. They come in the form of the licensees that Just Enterprises was not able to sign up in the states where Mr. Norinsberg signed up licensees and how much money that has cost in revenues to Just Enterprises. It's also going to be in the extra employees and companies that they've had to hire to answer their phones because of the thousands of calls they have to field for (888) JUSTICE.

1  There's going to be evidence of the profits that his company
2  and Mr. Norinsberg get from using the infringing trademark
3  (888) JUSTICE. Math is not really my best subject, but I will
4  attempt to go through the math with you and present this as
5  clearly as I can.
6      I want to conclude by telling you that I really
7  don't want you to take my word for anything. I want you to --
8  I don't want you to take Mr. Norinsberg's word. When he gives
9  his opening statement, I don't want you to take his word for
10 anything. Or my word. I want you to -- I'm really asking you
11 to look at all of the evidence. You'll hear -- trials are a
12 ping-pong match. You'll hear, "Oh, that favors that side.
13 This one favors that side." There's plenty of that in this
14 case. But when all of the evidence comes in, I want you to
15 think about what's really important. People can say whatever
16 they want in court, but what do people say when they're not in
17 court? What do people say when they're at the patent and
18 trademark office? Those are the types of evidence that I want
19 you to consider. When you hear all the testimony and
20 review -- hear all of the documents and listen to -- if I can
21 figure out how to work the computer -- the audio recordings of
22 callers coming in, then that's when I'd like you to make your
23 decision. I don't want you to take my word for it.
24      Again, I really, really appreciate your time. We're
25 going to try to make this trial go as quickly as possible. He

16

1 | says till Friday.  I'm betting him.  I'm going to try to
2 | help -- both sides try to get this thing done by Thursday
3 | even, start your weekend early.  So appreciate your time.

17
Case 3:06-cv-05023-JCE    Document 205    Filed 06/19/09    Page 17 of 18

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____          _____
     Date                        Jeannine M. Rankin, CCR, CSR, RPR